## HUDSON MOTOR CAR CO. v. AMERICAN PLUG CO. et al.

### No. 5199.

Circuit Court of Appeals, Sixth Circuit.

June 13, 1930.

Charles Neave, of New York City (William G. McKnight, of New York City, George P. Dike, of Boston, Mass., Beaumont, Smith & Harris, of Detroit, Mich., and MacLeod, Calver, Copeland & Dike, of Boston, Mass., on the brief), for appellant.

Edward N. Pagelsen, of Panama City, Fla. (John B. Macauley, of Chicago, Ill., and Campbell, Bulkley & Ledyard and Harry C. Bulkley, all of Detroit, Mich., on the brief), for appellees.

Before DENISON, MOORMAN, and HICKENLOOPER, Circuit Judges.

DENISON, Circuit Judge.

Infringement suit based on patent 1,058,-210, to Welch, for process for closing holes in castings. In order to avoid anticipation and to rest upon what is now seen to be the inventive step, if any there is, in the process, the claims must be limited to a more specific form than the language seems to indicate. The patentee attempts to do this, both by construction and by the effect of a disclaimer. The validity of the disclaimer is the question chiefly argued in this court.

The specification shows special applicability to holes which had been left in hollow castings for the purpose of removing the sand core. Welch proposed to do this by counterboring from the outside partly through, thereby leaving an annular shoulder, and by inserting from the outside a circular concave disc. Then by flattening this concavity and thereby increasing the diameter of the disc, the hole would be closed. Figures 3, 5, and 6 are here reproduced, and a typical claim, 3, is as follows:

"3. The process of closing a hole in a casting, consisting in enlarging the outer end of said hole so as to form a shoulder, placing a concave disc on said shoulder and flattening said disc to force it against the walls of said opening and bind it in place."

It has developed, and indeed, it is probably apparent upon giving careful attention, that if the disc is first cut out by the ordinary die, leaving its sides cylindrical, and is then concaved by an appropriate stamping operation, the sides will become slightly conical, and if the diameter at the upper edge made a close fit with the counterbored hole, the disc, at its lower edge, would be loose, and when it was restored to its flat condition, it would make at the best an indifferently tight closure. If, however, the disc structure was concaved first and then cut from the sheet by the ordinary die, the sides would be cylindrical and the final expansion would involve pressure against the surrounding hole throughout the thickness of the disc and a much tighter closure. As the special utility of the process has been found to be in closing these openings in the water jackets of gas engines, where the closure must form an efficient hydraulic seal, it has come to be seen that there is no merit in the invention unless it be limited to the use of discs having cylindrical sides; nor indeed, without that limitation, any novelty.

The patentee sought to insure this limitation by filing a disclaimer which provides (among other features not now important) that the concaved disc shall have "a substantially cylindrical edge." We find no satisfactory authoritative discussion of the principles controlling disclaimers. In the Supreme Court, Hailes v. Albany Co., 123 U. S. 582, 8 S. Ct. 262, 31 L. Ed. 284, disapproves

the disclaimer there involved, while in Dunbar v. Meyers, 94 U. S. 187, 24 L. Ed. 34, and Carnegie v. Cambria, 185 U. S. 403, 22 S. Ct. 698, 46 L. Ed. 968, it was held that a disclaimer restricting the invention to the more specific form was valid. In this court, in Enameled Co. v. Western Co., 269 F. 620, the disclaimer was held ineffective to accomplish such a restriction, while the contrary result was reached in Michigan Carton Co. v. Sutherland (C. C. A.) 29 F.(2d) 179, 183, 184, and in Permutit Co. v. Wadham (C. C. A.) 13 F.(2d) 454, 457.

We have concluded that the present case does not require a review and a possible reconcilement of these cases in an endeavor to ascertain the controlling principle, and we so conclude because of the insufficient disclosure in the specification and drawings of the specific feature now relied upon. The specification says only, "We then provide a disc $E$ which we prefer to make of brass, having a circular shape and of the diameter of the enlarged portion $C$ of the hole $B$. This disc is concaved, as indicated in Figure 3." If this means to say that the disc is concaved after it has been cut of the specified diameter, then the now claimed invention was not there. Nothing is said to the effect that Welch desired or secured closures which would remain tight under pressure.

Coming to the drawings, we do find that the edge as shown is cylindrical; but it is on a very small scale,—as compared with a truly cylindrical form, the amount of departure therefrom in the conical form, if with a small thin disc, would hardly be apparent in a drawing; the Patent Office drawing is always understood not to be intended as a working drawing, but to be diagrammatic and to contemplate considerable possible variance therefrom; upon this scale it would have been difficult to draw a diverging line for the conical side without greatly exaggerating the actual angle; and we cannot be satisfied to find in this particular drawing, unaided by the specification, a sufficient disclosure of the specific invention upon which it is now sought to support the disclaimer. The thought now said to be vital was seemingly not in Welch's mind, and the indication of it in the drawing may well be incidental and accidental. In thus holding, there is no intent to deny that a disclosure by drawing only, if clear enough, may be enough for this purpose; as such disclosure was held to be for more or less analogous purposes in Wagenhorst v. Hydraulic Co. (C. C. A. 6) 27 F.(2d) 27, 31. In the Michigan Carton Case it was fairly clear from the whole of the specification and drawings that the removal of the wax was intended to be along the entire to-be-glued strip adjacent to the edge, or else the plan of construction could not have operated as shown; and in the Permutit Case it was perfectly apparent that the apparatus was arranged for, and intended for, a downward flow. It could have been rearranged and readjusted for an upward flow, but there was nothing to indicate that this was contemplated. Neither one of these cases, nor yet we think the Dunbar or Carnegie Case, compels upholding a disclaimer which limits the invention to a specific form, the existence of which was indicated only so obscurely as in this Welch patent.

The same general considerations forbid reading into the claims, by way of construction or limitation, a similar restrictive idea.

It follows that the decree must be reversed, and the bill dismissed.